MADELINE MCDERMOTT, ADMINISTRATRIX
(ESTATE OF WILLIAM MCDERMOTT), ET AL.
*v*. STATE OF CONNECTICUT
(AC 34255)

Robinson, Alvord and Pellegrino, Js.

Argued March 13—officially released August 20, 2013

*Michael R. Bullers*, assistant attorney general, with whom were *Maite Barainca*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellant (state).

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Thomas McNamara*, for the appellees (plaintiffs).

*Opinion*

ALVORD, J. The defendant, the state of Connecticut, appeals from the judgment of the trial court, rendered after a bench trial, in favor of the plaintiffs, Madeline McDermott, both individually and in her capacity as administratrix of the estate of her late husband, William

McDermott (decedent).[1] On appeal, the defendant claims that the court improperly (1) determined the scope of the duty of care that it owed the decedent, (2) concluded that it had breached the duty of care owed to the decedent,[2] and (3) concluded that the decedent's death was proximately caused by the conduct of the defendant's employees. We reverse the judgment of the trial court.

The following facts were found by the court or are not disputed. On February 8, 2005, employees from the defendant's Department of Transportation were dispatched to Cromwell to remove a fifty-five foot sugar maple tree that was located on a grass strip bounded easterly by Main Street and westerly by a pedestrian sidewalk. Upon arrival, the work crew, consisting of six men, marked the work site with two traffic cones that were placed on the sidewalk. One cone was located approximately eighty-five feet to the south of the tree, and the other cone was located approximately one hundred feet to the north of the tree. The two cones were not moved during the course of the tree removal operation.

The crew then proceeded to remove the limbs from the tree. After the "limbing" had been completed, the crew removed the remaining tree trunk in segments beginning at the top and progressing downward, a procedure known as "chunking." At approximately 1:30 p.m., the decedent, a pedestrian with no connection to the removal operation, approached the work site. He walked approximately thirty feet past the southern sidewalk cone and stood between two members of the work

[1] For convenience, we refer to Madeline McDermott in both capacities as the plaintiff.

[2] Because we conclude that the court erroneously determined the scope of duty owed to the decedent and that the defendant's conduct was not the proximate cause of the decedent's death, we do not reach the defendant's second claim.

crew. At that point, the three men were approximately fifty-five feet from the surface of the tree, which was now approximately twenty-five feet in height. They watched as another crew member in a bucket truck prepared to remove an additional ten foot chunk from the tree trunk. One end of a rope was tied to the top of the remaining tree, and the other end of the rope was tied to a pickup truck. After appropriate cuts were made in the tree, the pickup truck pulled the trunk segment in a southerly direction. The tree segment fell to the ground in a controlled manner and landed in the general area in which it was anticipated to fall.

When the trunk segment hit the ground, however, it fell on one of the limbs that previously had been removed from the tree. The limb, described as a log approximately twenty-five inches in length, was propelled into the air by the force of the falling trunk segment, and it flew at great speed and a low trajectory toward the decedent and the two crew members. The log struck the decedent's forehead. He fell backward and hit the back of his head on the sidewalk. After striking the decedent, the log continued to travel more than thirty additional feet and came to rest approximately ninety feet from the tree. The decedent died as the result of being hit by the log, either by the force of the log's impact with his forehead or by hitting the back of his head on the sidewalk after the impact caused him to fall backward. The plaintiff commenced this action against the defendant, seeking damages for wrongful death and loss of consortium, after permission to sue the state had been granted by the claims commissioner pursuant to General Statutes § 4-160 et seq.

By agreement of the parties, the court bifurcated the liability and damages phases of the trial. After seven days of evidence, the court issued a memorandum of decision on June 15, 2011, concluding that the defendant

was liable to the plaintiff on both counts of her complaint. In that decision, the court made the following determinations: (1) the exact circumstances of the decedent's death were not reasonably foreseeable because there was no evidence that anyone had ever been killed or injured in such a manner from such a distance during a tree removal operation; (2) the prevailing safety standard in the tree removal industry is that persons who are not directly involved in cutting the tree should stand at least two tree lengths away from the tree; (3) the decedent was standing more than two tree lengths away from the remaining tree trunk when he was struck by the log; (4) the prevailing safety standard did not absolve the defendant from liability because " '[e]vidence of custom in the trade . . . is not conclusive' "; (5) the fact that the decedent was standing within the area marked by the sidewalk traffic cones was the "determinative" factor in this case; (6) although the cones could have been moved closer to the tree as chunks of the tree trunk were removed, the crew did not move the cones and the defendant "voluntarily assumed a duty that may not have been legally imposed upon it otherwise"; (7) "requiring work crews to keep bystanders and pedestrians out of work zones that they themselves have established is entirely consistent with the public policy favoring a safe populace and a realistic vision of acceptable risk"; (8) in demarcating the limits of the work zone with the traffic cones, the work crew established the limits of its duty to the decedent; (9) the defendant violated that duty of care by allowing the decedent to stand within the demarcated work zone during the tree removal operation; and (10) the defendant's violation of that duty of care proximately caused the decedent's death. The court subsequently held a hearing in damages and awarded the plaintiff $46,371.65 in economic damages, $825,000 in noneconomic damages, and $435,000 in damages for loss of consortium. This appeal followed.

I

The defendant's first claim is that the trial court improperly determined the scope of the duty of care that it owed the decedent. Specifically, the defendant argues that the court erroneously framed the duty of care issue as follows: "[D]id the members of the work crew have a duty to require [the decedent] to move to a location beyond the sidewalk cone . . . ." The defendant concedes that it had a duty of care to members of the general public during the tree removal operation, but claims that the duty owed was "to exercise reasonable care for the safety of the general public." It claims that it met that duty by keeping the decedent and other members of the general public a distance of more than two tree lengths from the remaining tree and that the decedent was in a safe location irrespective of the placement of the cones.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury.[3] . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . The

---

[3] As noted in our case law, the duty inquiry relating to the attenuation between the harm to the plaintiff and the defendant's alleged negligent conduct is quite similar to the analysis undertaken with respect to the third element of negligence, proximate cause. "[T]he question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the proximate cause of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same. W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 42, p. 274; see also id., § 53, p. 358." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 574 n.9, 717 A.2d 215 (1998).

issue of whether a duty exists is a question of law . . . which is subject to plenary review. We sometimes refer to the scope of that duty as the requisite standard of care." (Citations omitted; internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 29, 930 A.2d 682 (2007). With respect to the foreseeability element, the fact finder must consider whether the defendant knew, or should have known, that the situation at hand would obviously and naturally, even though not necessarily, expose the plaintiff to probable harm unless preventive measures were taken. See *LePage* v. *Horne*, supra, 262 Conn. 124.

In the present case, as found by the court, all of the tree's limbs and several segments of the tree trunk had been removed before the decedent approached the work site. Although the log that struck the decedent remained by the tree, it was not standard industry practice to remove all "limbing debris" prior to the "chunking" operation. The court expressly determined that "there was no evidence that anyone had ever been killed or injured in such a manner from such a distance during

a tree removal operation." The court further stated that the decedent, when struck by the log, was standing in an area "considered [to be] a safe distance [from the tree removal operation] according to the safety standard that prevails in the tree removal industry."[4] The cones, set up before the operation began, could have been moved closer to the tree as segments of the tree trunk were removed and been in compliance with the industry standards or rules. Because the work crew left the cones in their original locations, however, the court determined that the decedent was standing within the "work zone" that had been established by the work crew, even though that work zone "exceeded the industry standard." The court concluded that "[i]n setting the

---

[4] The court noted that " '[e]vidence of custom in the trade may be admitted on the issue of standard of care, but it is not conclusive.' " The court was referring to an industry standard promulgated by the International Society of Arboriculture and approved by the American National Standards Institute (institute). The institute's standards, according to the plaintiff's expert, are the nationally recognized arboriculture standards and are applicable to all tree care related work. Section 9.5.12 of the American National Standard for Arboricultural Operations provides: "Workers not directly involved in manual land-clearing operations shall be at least two tree lengths away from the tree or trunk being dropped." There is no institute standard addressed directly to bystander nonworkers, but the court found that the two tree length rule was applicable to this situation, and the parties do not challenge that determination.

We note that the court never opined that the industry standard of two tree lengths from the tree cutting operation was not reasonable. When the court noted that evidence of the custom of the trade may not be conclusive, it referenced, inter alia, comment (c) of § 295A of the Restatement (Second) of Torts. Section 295A provides: "In determining whether conduct is negligent, the customs of the community, or of others under like circumstances, are factors to be taken into account, but are not controlling where a reasonable man would not follow them." 2 Restatement (Second), Torts, Standard of Conduct § 295A, p. 62 (1965). Comment (c) of § 295A provides in relevant part: "Customs which are entirely reasonable under the ordinary circumstances which give rise to them may become quite unreasonable in the light of a single fact in the particular case." Id., § 295A, comment (c), p. 63. The trial court did not find § 9.5.12 of the American National Standard for Arboricultural Operations unreasonable under the circumstances of this case, but, rather, determined that the defendant had assumed a greater duty of care by allowing the decedent to stand within the area marked by the cones as placed by the work crew prior to the tree removal operation.

perimeter of the work zone, the work crew voluntarily assumed a duty that may not have been legally imposed upon it otherwise."

We agree with the defendant that the duty of care owed to the decedent and other members of the general public was to keep them a reasonably safe distance away from the tree removal operation. Although we agree with the court that, under certain circumstances, a party may voluntarily assume a duty that otherwise may not have been legally imposed, we disagree with the court that the defendant in the present case assumed the duty to remove the decedent from the area in which he was standing simply because of the location of the cones.

The court, in reaching its conclusion that the defendant voluntarily assumed a greater duty of care beyond that legally imposed by marking a work site in excess of industry standards, relied on a Superior Court decision that cited § 323 of the Restatement (Second) of Torts. Section 323 provides that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." 2 Restatement (Second), Torts, Standard of Conduct § 323, p. 135 (1965).[5]

---

[5] The Superior Court's standard civil jury instruction 3.6-8, the notes to which cite to § 323 of the Restatement (Second) of Torts, provides: "A person who voluntarily performs an act, without legal obligation to do so, has the same duty of care in performing that act that any other person would have under the same circumstances. That duty is the duty to use reasonable care under the circumstances." Connecticut Civil Jury Instructions 3.6-8 (revised January 1, 2008), available at http://www.jud.ct.gov/JI/civil/part3/3.6-8.htm (last visited August 6, 2013).

In its memorandum of decision, the court did not find that the decedent relied upon the placement of the cones when he walked within the area to stand with the crew members. Further, the court did not find that the risk of harm of being hit by tree debris had increased because the southerly cone, instead of being placed fifty feet from the tree in accordance with industry standards, was placed eighty-five feet from the tree in excess of industry standards. The decedent was standing fifty-five feet from the tree when hit. The log traveled more than ninety feet, which was further than even the "voluntarily assumed" coned demarcations of the work site.

The court's factual findings in this case are not supportive of its determination with respect to the scope of the duty owed by the defendant to the decedent. The court concluded that the defendant's duty was to prevent the decedent from walking past the cone, even though the court found that the decedent was standing within an area considered appropriate by industry standards and that the log that struck him traveled beyond the coned area. The court essentially imposed strict liability on the defendant for any harm that occurred within the coned area.[6]

II

The defendant also claims that the trial court improperly concluded that the decedent's death was proximately caused by the conduct of the defendant's employees in failing to remove him from the area marked by the cones.[7] We agree.

---

[6] "In so far as the defendant is held liable for consequences which do not lie within the original risk which the defendant has created, a strict liability without fault is superimposed upon the liability that is logically to be attributed to the negligence itself." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 575 n.10, 717 A.2d 215 (1998).

[7] The trial court, after reciting the four essential elements in a negligence case, determined that the only issues to be resolved were (1) whether the defendant owed the decedent a duty to remove him from the location beyond the sidewalk cone and (2) whether the failure to do so constituted a breach

"Causation is an essential element of a cause of action in negligence. . . . [A] plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause . . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries.[8] . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Citation omitted; internal quotation marks omitted.) *Kumah* v. *Brown*, 130 Conn. App. 343, 347, 23 A.3d 758 (2011), aff'd, 307 Conn. 620, 58 A.3d 247 (2013).

"Proximate cause establishes a reasonable connection between an act or omission of a defendant and the

of that duty. The court did not undertake a proximate cause analysis. Instead, in footnote 3 of its memorandum of decision, the court stated: "As relates to the other elements of the negligence claim, the evidence clearly demonstrated that the log was the proximate cause of [the decedent's] death." The question as to proximate cause, however, should have been whether the defendant's conduct, in permitting the decedent to remain within the area marked by the cones, was a substantial factor in bringing about the decedent's death. See *Malloy* v. *Colchester*, 85 Conn. App. 627, 634, 858 A.2d 813, cert. denied, 272 Conn. 907, 863 A.2d 698 (2004).

[8] "Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." (Internal quotation marks omitted.) *Malloy* v. *Colchester*, 85 Conn. App. 627, 633, 858 A.2d 813, cert. denied, 272 Conn. 907, 863 A.2d 698 (2004).

harm suffered by a plaintiff. . . . Proximate cause serves to [temper] the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . In other words, legal cause can be portrayed pictorially as a Venn diagram, with the circle representing cause in fact completely subsuming the smaller circle representing proximate cause, which specifically focuses on that which we define as legal causation. [Our Supreme Court] has defined proximate cause as [a]n *actual cause* that is a *substantial factor* in the resulting harm . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995).

The negligent conduct of the defendant, as found by the court, was allowing the decedent to stand in an area within the work zone demarcated by the southerly cone even though there had been no violation of industry standards or rules. The court acknowledged that the "specific event that caused [the decedent's] death was not legitimately foreseeable" and that there was "no evidence that anyone had ever been killed or injured in such a manner from such a distance during a tree removal operation." These factual findings are amply supported by the record.[9] A "defendant [is] not required to take precautions against hazards too remote to be reasonably foreseeable." *Roy* v. *Friedman Equipment Co.*, 147 Conn. 121, 124, 157 A.2d 599 (1960). "Sometimes, accidents happen without negligence." *Carrasquillo* v. *Carlson*, 90 Conn. App. 705, 707, 880 A.2d 904 (2005).

---

[9] At trial, work crew members testified that they believed that the decedent and the two employees standing next to him were in a safe area, that there was no concern that they could be hit by tree debris and that they had never seen a piece of a tree propelled out in such a manner before the day of the incident. The defendant's director of public safety and the defendant's expert, a board certified master arborist, likewise testified that the decedent was in a safe area, that none of the defendant's standard protocols had been

Despite these findings, the court nevertheless determined that the defendant was liable for the decedent's death. Such a liability determination compelled the conclusion that the defendant's failure to remove the decedent from the area in which he was standing was the proximate cause of the decedent's death. We disagree with that conclusion for the reasons already discussed. The question of proximate cause is generally a factual issue. It becomes a question of law, however, when the mind of a fair and reasonable person could reach only one conclusion. Under the circumstances of this case, we conclude that the issue of proximate cause is a question of law and that the defendant's conduct was not the proximate cause of the decedent's death. See *Doe* v. *Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 608; *Hughes* v. *National Car Rental Systems, Inc.*, 22 Conn. App. 586, 590, 577 A.2d 1132, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990).

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion ROBINSON, J., concurred.

PELLEGRINO, J., dissenting. I regret that I do not agree with the opinion of the majority, and respectfully, I feel compelled to file this dissent.

The critical facts, as set forth more fully in the majority's opinion, are not in dispute. Employees of the Department of Transportation of the defendant, state of Connecticut, were in the process of removing a tree. At the beginning of the tree removal operation, the work crew marked off a work zone with traffic cones. One

---

violated, and that no similar situations had occurred in which a tree limb traveled so far and in such a manner to cause injuries.

cone was located approximately eighty-five feet to the south of the tree, and the other cone was located approximately one hundred feet to the north of the tree. The decedent, William McDermott, a bystander, walked past the southern cone into the delineated work zone and stood talking with two members of the work crew approximately fifty-five feet from the surface of the tree, which at that point was twenty-five feet tall. There was no evidence that the workers asked the decedent to leave the work zone at any time. While the decedent was standing with the work crew, a segment of the tree trunk was cut from the tree and fell to the ground; upon hitting the ground, it struck a log that previously had been removed from the tree. The log was propelled into the air, and it struck the decedent, causing him to fall backward and hit the back of his head on the sidewalk. After striking the decedent, the log continued in the air approximately another thirty feet and eventually came to rest almost ninety feet from the tree.

I agree with the trial court that the defendant had a duty to protect members of the public from foreseeable harm within the coned work zone it had created, and, accordingly, that the determinative fact in this case is that the decedent was standing within the perimeter of the work zone at the time he was struck by the log. The majority disagrees, holding that notwithstanding the placement of the cones, the defendant only owed a duty to the decedent and other members of the public to keep them a "reasonably safe distance away" from the tree being removed—as informed by industry standards in the field of tree care and removal. The majority, therefore, attaches greater significance to the fact that the decedent was fifty-five feet away from the tree at the time he was struck by the log, or, five feet beyond the prevailing "two tree lengths" standard for persons not directly involved in a tree removal operation.[1] This

---

[1] I note that § 9.5.12 of the American National Standard for Arboricultural Operations, which was approved by the American National Standards Insti-

formulation of the defendant's duty effectively elevates industry custom for workers to a conclusive standard of liability for the general public and renders irrelevant the voluntary actions of the work crew in marking the perimeter for their removal operation.[2] In my view, this result is not in keeping with our precedent and well established principles of negligence law. See, e.g., *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 381, 441 A.2d 620 (1982) (evidence of custom in trade "may be admitted on the issue of the standard of care, but is not conclusive").

Moreover, I agree with the trial court that the defendant's failure to remove the decedent from the work zone proximately caused the decedent's death.[3]

tute, provides that "[w]orkers not directly involved in manual land-clearing operations shall be *at least* two tree lengths away from the tree or trunk being dropped." (Emphasis added.) The decedent, a bystander, was standing a mere five feet beyond this minimum standard for nonworkers at the time of the incident. Furthermore, the trial court never made a finding that the two tree lengths standard established what constitutes a "reasonably safe" distance from the tree—the court simply noted that two tree lengths is "considered a safe distance according to the safety standard that prevails in the tree removal industry" and found that the decedent was more than two tree lengths away from the tree when he was struck by the log.

[2] I am not swayed by the majority's concern that, by focusing on the placement of the cones instead of on industry safety standards, the "court essentially imposed strict liability on the defendant for any harm that could have occurred within the coned area." The trial court did not hold that the defendant would have been liable for *any* injury occurring within the delineated work zone; rather, the defendant's liability extended only to reasonably foreseeable injuries—those stemming from the tree removal operation and occurring within the marked perimeter of the removal site.

[3] I agree with the majority that the trial court, in a footnote in its memorandum of decision, incorrectly identified "the log"—rather than the defendant's failure to remove the decedent from the coned work zone—as the proximate cause of the decedent's death. I do not, however, agree with the majority's assessment that the trial court did not undertake any further proximate cause analysis in the memorandum of decision. In my view, the trial court appropriately analyzed the causation issues in conjunction with its determination of the scope of the defendant's duty. Indeed, as the majority recognized, the duty and proximate cause inquiries " 'are, in reality, one and the same.' " Furthermore, in its concluding paragraph, the trial court appropriately tied the defendant's conduct to the proximate cause inquiry, stating:

Although the majority characterizes proximate cause in this case as a question of law, our Supreme Court has cautioned that proximate cause "becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Trzcinski* v. *Richey*, 190 Conn. 285, 295, 460 A.2d 1269 (1983). Because I believe that there is room for "reasonable disagreement" here, I would defer to the factual finding of the trial court on proximate cause, which was not clearly erroneous in view of the evidence in the record. See, e.g., *Hernandez* v. *Dawson*, 109 Conn. App. 639, 641–42, 953 A.2d 664 (2008) (In reviewing findings of fact on proximate cause, "our review is limited to deciding whether such findings were clearly erroneous. A finding of fact is clearly erroneous when there is no evidence in the record to support it." [Internal quotation marks omitted.]).

In short, I agree with the trial court that the defendant assumed a duty to the decedent, that the defendant breached that duty, and that the defendant's breach of duty proximately caused the decedent's death. I therefore respectfully dissent, and would affirm the judgment of the trial court.

"Allowing [the decedent] to stand within [the work] zone for an extended period of time during tree removal operations was a negligent violation of [the defendant's] duty; *a violation that proximately caused [the decedent's] death.*" (Emphasis added.)