******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MADELINE MCDERMOTT, ADMINISTRATRIX
(ESTATE OF WILLIAM MCDERMOTT), ET
AL. *v.* STATE OF CONNECTICUT
(SC 19221)

Rogers, C. J., and Palmer, Zarella, Eveleigh and Espinosa, Js.

*Argued January 9—officially released April 28, 2015*

*Hugh D. Hughes*, with whom, on the brief, was *Thomas McNamara*, for the appellants (plaintiffs).

*Michael R. Bullers*, assistant attorney general, with whom were *Maite Barainca*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (state).

*Opinion*

EVELEIGH, J. The plaintiff, Madeline McDermott, both individually and in her capacity as administratrix of the estate of her husband, William McDermott (decedent),[1] appeals from the judgment of the Appellate Court, reversing the judgment of the trial court in her favor and remanding the case with direction to render judgment in favor of the defendant, the state of Connecticut. See *McDermott* v. *State*, 145 Conn. App. 75, 73 A.3d 886 (2013). On appeal to this court, the plaintiff contends that the Appellate Court improperly reversed the judgment of the trial court on the ground that the trial court had improperly determined that the defendant had assumed a greater duty of care than reflected in industry standards. The plaintiff also claims that the Appellate Court improperly concluded that the defendant's actions were not the proximate cause of the death of the decedent. While we agree with the Appellate Court that the judgment of the trial court must be reversed, we disagree with the Appellate Court's decision to remand the present case to the trial court with direction to render judgment in favor of the defendant. Instead, we conclude that the trial court used the wrong standard in determining that the defendant was liable and, therefore, under our case law, the matter must be returned to the trial court for a new trial in which the proper standard is applied. Therefore, we affirm the judgment of the Appellate Court in part, reverse the judgment of the Appellate Court in part, and order a new trial.

The opinion of the Appellate Court sets forth the following facts and procedural history. "On February 8, 2005, employees from the defendant's Department of Transportation were dispatched to Cromwell to remove a fifty-five foot sugar maple tree that was located on a grass strip bounded easterly by Main Street and westerly by a pedestrian sidewalk. Upon arrival, the work crew, consisting of six men, marked the work site with two traffic cones that were placed on the sidewalk. One cone was located approximately eighty-five feet to the south of the tree, and the other cone was located approximately [100] feet to the north of the tree. The two cones were not moved during the course of the tree removal operation.

"The crew then proceeded to remove the limbs from the tree. After the 'limbing' had been completed, the crew removed the remaining tree trunk in segments beginning at the top and progressing downward, a procedure known as 'chunking.' At approximately 1:30 p.m., the decedent, a pedestrian with no connection to the removal operation, approached the work site. He walked approximately thirty feet past the southern sidewalk cone and stood between two members of the work crew. At that point, the three men were approximately fifty-five feet from the surface of the tree, which was

now approximately twenty-five feet in height. They watched as another crew member in a bucket truck prepared to remove an additional ten foot chunk from the tree trunk. One end of a rope was tied to the top of the remaining tree, and the other end of the rope was tied to a pickup truck. After appropriate cuts were made in the tree, the pickup truck pulled the truck segment in a southerly direction. The tree segment fell to the ground in a controlled manner and landed in the general area in which it was anticipated to fall.

"When the trunk segment hit the ground, however, it fell on one of the limbs that previously had been removed from the tree. The limb, described as a log approximately twenty-five inches in length, was propelled into the air by the force of the falling trunk segment, and it flew at great speed and a low trajectory toward the decedent and the two crew members. The log struck the decedent's forehead. He fell backward and hit the back of his head on the sidewalk. After striking the decedent, the log continued to travel more than thirty additional feet and came to rest approximately ninety feet from the tree. The decedent died as the result of being hit by the log, either by the force of the log's impact with his forehead or by hitting the back of his head on the sidewalk after the impact caused him to fall backward. The plaintiff commenced this action against the defendant, seeking damages for wrongful death and loss of consortium, after permission to sue had been granted by the [C]laims [C]ommissioner pursuant to General Statutes § 4-160 et seq.

"By agreement of the parties, the court bifurcated the liability and damages phases of the trial. After seven days of evidence, the court issued a memorandum of decision on June 15, 2011, concluding that the defendant was liable to the plaintiff on both counts of her complaint. In that decision, the court made the following determinations: (1) the exact circumstances of the decedent's death were not reasonably foreseeable because there was no evidence that anyone had ever been killed or injured in such a manner from such a distance during a tree removal operation; (2) the prevailing safety standard in the tree removal industry is that persons who are not directly involved in cutting the tree should stand at least two tree lengths away from the tree; (3) the decedent was standing more than two tree lengths away from the remaining tree trunk when he was struck by the log; (4) the prevailing safety standard did not absolve the defendant from liability because ' "[e]vidence of custom in the trade . . . is not conclusive" '; (5) the fact that the decedent was standing within the area marked by the sidewalk traffic cones was the 'determinative' factor in this case; (6) although the cones could have been moved closer to the tree as chunks of the tree trunk were removed, the crew did not move the cones and the defendant 'voluntarily assumed a duty that may not have been

legally imposed upon it otherwise'; (7) 'requiring work crews to keep bystanders and pedestrians out of work zones that they themselves have established is entirely consistent with the public policy favoring a safe populace and a realistic vision of acceptable risk'; (8) in demarcating the limits of the work zone with the traffic cones, the work crew established the limits of its duty to the decedent; (9) the defendant violated that duty of care by allowing the decedent to stand within the demarcated work zone during the tree removal operation; and (10) the defendant's violation of that duty of care proximately caused the decedent's death. The court subsequently held a hearing in damages and awarded the plaintiff $46,371.65 in economic damages, $825,000 in noneconomic damages, and $435,000 in damages for loss of consortium." Id., 77–79.

In addition, although the trial court held that the exact circumstances of the decedent's death were not foreseeable, the trial court noted correctly that "to meet the test of foreseeability, the exact nature of the harm suffered need not have been foreseeable, only the 'general' nature of the harm." (Emphasis omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 573, 717 A.2d 215 (1998). The trial court further stated that "[w]hile the specific event that caused [the decedent's] death was not legitimately foreseeable, the general nature of the harm (i.e., the possibility of a bystander suffering injury or death within the perimeter of a tree removal site), certainly was." Additional facts will be set forth as necessary.

A majority of the Appellate Court panel disagreed with the trial court that the defendant in the present case assumed the duty to remove the decedent from the area in which he was standing simply because of the location of the cones.[2] *McDermott* v. *State*, supra, 145 Conn. App. 83. The Appellate Court held that the trial court did not make sufficient findings to justify a conclusion that the defendant had voluntarily assumed a greater duty. Id., 84. Further, the Appellate Court held that, under the circumstances of the present case, the defendant's conduct was not the proximate cause of the decedent's death. Id. Therefore, the Appellate Court reversed the judgment of the trial court and remanded the matter to the trial court with direction to render judgment in favor of the defendant. Id., 87. The plaintiff filed a petition for certification to appeal, which we granted, limited to the following questions: (1) "Did the Appellate Court properly reverse the judgment of the trial court on the basis that the trial court incorrectly found that the [defendant] had assumed a greater duty of care than that reflected in industry custom or standards?"; and (2) "Did the Appellate Court properly conclude that the [defendant's conduct] was not the proximate cause of the death of the [plaintiff's] decedent?" *McDermott* v. *State*, 310 Conn. 937, 79 A.3d 890 (2013).

On appeal, the plaintiff contends that the Appellate Court improperly: (1) held that an industry standard of care for workers binds courts to apply it to pedestrians in the absence of a specifically articulated finding that the industry standard is unreasonable; (2) disturbed the trial court's finding that the harm was reasonably foreseeable; (3) required the plaintiff to show the specific kind of harm that occurred in the past; and (4) determined that there was no proximate cause. In response, the defendant asserts that the Appellate Court properly concluded that the trial court had incorrectly determined that the defendant voluntarily assumed a greater duty of care and established a strict liability standard. The defendant claims that the reasonable industry standard was the appropriate standard to use and to evaluate the claim that its duty to the decedent was to exercise reasonable care. Further, the defendant argues that the Appellate Court properly determined that there was no proximate cause in the present case and that the plaintiff is not entitled to a new trial. We agree with the Appellate Court that the trial court used an improper standard. Contrary to the Appellate Court judgment, however, we remand the case for a new trial so that the correct standard may be applied to the facts of the present case. We address the issue regarding proximate cause to the extent that issue is likely to arise on remand.

I

The plaintiff first claims that the Appellate Court improperly reversed the judgment of the trial court on the ground that the trial court incorrectly determined that the defendant had assumed a duty of care greater than what was legally required. In response, the defendant claims that the Appellate Court properly concluded that the factual findings made by the trial court did not support its conclusion that the defendant voluntarily assumed a duty of care beyond that legally imposed. We agree with the defendant.

We begin by setting forth the governing legal principles and standard of review. We begin with the standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . The issue of whether a duty exists is a question of law . . .

which is subject to plenary review. We sometimes refer to the scope of that duty as the requisite standard of care." (Citations omitted; internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 29, 930 A.2d 682 (2007). "[T]he fact finder must consider whether the defendant knew, or should have known, that the situation at hand would obviously and naturally, even though not necessarily, expose [the decedent] to probable injury unless preventive measures were taken." (Internal quotation marks omitted.) *LePage* v. *Horne*, supra, 262 Conn. 124.

The trial court fully explained the duty it employed in rendering a verdict for the plaintiff. Citing, inter alia, § 323 of the Restatement (Second) of Torts, the trial court held that "[i]n setting the perimeter of the work zone, the work crew voluntarily assumed a duty that may not have been legally imposed upon it otherwise. A person who voluntarily performs an act, without legal obligation to do so, has the same duty of care in performing that act that any other person would have under the same circumstances." (Internal quotation marks omitted.) In its conclusion the trial court opined: "In setting the limits of the work zone, the work crew established the limits of its duty to [the decedent] and other pedestrians. Allowing [the decedent] to stand within that zone for an extended period of time during tree removal operations was a negligent violation of that duty; a violation that proximately caused [the decedent's] death. Judgment shall enter in favor of [the] plaintiff on the issue of liability on all counts of the complaint and the court will hold a hearing in damages at a later date."

Section 323 of the Restatement (Second) of Torts, upon which the trial court based its decision, provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable

care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.''

In the present case, we agree with the Appellate Court majority that "the [trial] court did not find that the decedent relied upon the placement of the cones when he walked within the area to stand with the crew members. Further, the court did not find that the risk of harm of being hit by tree debris had increased because the southerly cone, instead of being placed fifty feet from the tree in accordance with industry standards, was placed eighty-five feet from the tree in excess of industry standards. The decedent was standing fifty-five feet from the tree when hit. The log traveled more than ninety feet, which was further than even the 'voluntarily assumed' coned demarcations of the work site.'' *McDermott* v. *State*, supra, 145 Conn. App. 84. Therefore, the trial court did not make the requisite factual findings necessary to conclude that the defendant had voluntarily assumed a greater duty than that which was legally required. We conclude that, without these findings, the trial court improperly applied the standard set forth in § 323 of the Restatement (Second) of Torts.

## II

After reversing the judgment of the trial court, the Appellate Court remanded the case with direction to render judgment in favor of the defendant. We disagree with this result. Having concluded that the trial court applied the wrong legal standard to the facts of the present case, we conclude that it is necessary to remand the case to the trial court for a new trial to allow the parties to present their cases with the correct legal standard in mind and to allow the trial court to evaluate the facts in light of this correct legal standard.

We have often stated that, a party is generally entitled to a new trial when, on appeal, a different legal standard is determined to be required, unless we conclude that, based on the evidence, a new trial would be pointless. See *State* v. *Sanseverino*, 291 Conn. 574, 588–89, 969 A.2d 710 (2009). We presume that "any insufficiency in proof was caused by the subsequent change in the law . . . [and] not the [party's] failure to muster evidence.'' (Internal quotation marks omitted.) Id., 588; see also *O'Dell* v. *Kozee*, 307 Conn. 231, 234–35, 53 A.3d 178 (2012) (new trial required when trial court did not make required finding of visible intoxication necessary for liability under General Statutes § 30-102).

Recently, we required a new trial where, "the trial court's failure to consider whether preventing an abduction continued to be a purpose of the supervised visitations . . . and its failure to consider the defendant's duty in light of the presence or absence of that purpose, rendered its analysis of the foreseeability of the abduc-

tion and its judgment in favor of the defendant fatally flawed." *Mirjavadi* v. *Vakilzadeh*, supra, 310 Conn. 194–95.

Similar to the trial court's failure in *Mirjavadi*, the trial court's failure to apply the correct legal standard to determine whether the defendant had assumed a greater duty of care than that which is legally required rendered its analysis of whether the defendant breached a duty to the decedent, and the judgment in favor of the plaintiff, fatally flawed. Accordingly, we conclude that the present case must be remanded for a new trial.

## III

Having determined that the wrong standard was applied in the present case, and that the matter must be remanded for a new trial, we now consider the appropriate standard that should be applied upon remand. The defendant concedes that a tree removal operation could be dangerous and that the work crew was under a duty to exercise reasonable care for the safety of the general public. The defendant further concedes that "[s]pecifically as to the circumstances of this case, meeting the standard of care or scope of duty as to [the decedent] meant keeping him a safe distance from the tree cut being made during his presence." We agree.

In view of the fact that the defendant has conceded that it owed a duty to the decedent, it is only necessary for us to discuss the scope of that duty. "[T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Mirjavadi* v. *Vakilzadeh*, supra, 310 Conn. 192.

In determining the scope of the duty in the present case, the trial court considered the following: "[T]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . . It is sometimes said that compensation for losses is the primary function of tort law . . . [but it] is perhaps more accurate to describe the primary function as one of determining when compensation [is] required. . . . An equally compelling function of the tort system is the prophylactic factor of preventing future harm . . . . The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. . . . [I]mposing liability for consequential damages often creates significant risks of

affecting conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks. . . . The court is keenly aware that requiring tree removal crews to guarantee the safety of all pedestrians and passersby would make the cost of tree removal prohibitive; a result that would clearly run counter to the public interest. However, requiring work crews to keep bystanders and pedestrians out of work zones that they themselves have established is entirely consistent with the public policy favoring a safe populace and a realistic vision of acceptable risk." (Citations omitted; internal quotation marks omitted.)

The defendant contends that meeting the standard of care or scope of the duty as to the decedent meant keeping him a safe distance from the tree cut being made during his presence. The defendant further asserts that the industry standard, which requires the protected work zone to be two times the height of the tree, was the appropriate standard of care under the facts of the present case. Therefore, in view of the fact that the decedent was approximately five feet outside of the industry standard, the defendant had no duty of care to the decedent because he was beyond the scope of the defendant's duty. In response, the plaintiff contends that industry standards have never been binding on a civil court of law. She points to the fact that the standards introduced at trial were standards imposed for workers, not pedestrians. We agree with the plaintiff.

We further agree with the trial court that "[e]vidence of custom in the trade may be admitted on the issue of the standard of care, but it is not conclusive." *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 381, 441 A.2d 620 (1982); see also 2 Restatement (Second), Torts § 295A, comment (c) (1965). "[I]n most cases reasonable prudence is in fact common prudence; but strictly it is never its measure . . . . Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission." *T. J. Hooper*, 60 F.2d 737, 740 (2d Cir.), cert. denied sub nom. *Eastern Transportation Co.* v. *Northern Barge Corp.*, 287 U.S. 662, 53 S. Ct. 220, 77 L. Ed. 571 (1932). The trier of fact is not bound by the industry standard, but rather should consider it in light of the totality of the evidence presented in the case. *Coburn* v. *Lenox Homes, Inc.*, supra, 381.

Therefore, we disagree with the Appellate Court to the extent that it ruled that the industry standard was an absolute bar to liability in this matter. Rather, the standard is but one piece of information for the court to consider along with, inter alia, the fact that the standard may apply only to workers,[3] the position of the decedent with respect to the distance required by the industry standard, the amount of time the decedent was in the

work zone without being asked to leave, whether the distances involved are precise measurements, whether workers would have known the exact measurements in question before requiring a person to leave the area, and whether the workers were required to request anyone, other than a fellow worker or supervisor, to leave the work zone area either immediately upon entry or within a reasonable time thereof. Therefore, we conclude that the standard to be used is the general negligence standard of duty, breach, causation and actual injury.

IV

In light of the fact that we are remanding the matter for a new trial we address, as a matter likely to arise on remand, the defendant's claim that the conduct of its employees, namely failing to remove the decedent from the area marked by the cones, was not the proximate cause of the decedent's death.

The Appellate Court concluded that "[t]he question of proximate cause is generally a factual issue. It becomes a question of law, however, when the mind of a fair and reasonable person could reach only one conclusion. Under the circumstances of this case, we conclude that the issue of proximate cause is a question of law and that the defendant's conduct was not the proximate cause of the decedent's death." *McDermott* v. *State*, supra, 145 Conn. App. 87. We disagree.

Proximate cause is "[a]n actual cause that is a substantial factor in the resulting harm . . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . Foreseeability is likewise considered when the defendant claims there has been no negligence because an unforeseeable intentional tort, force of nature, or criminal event superseded the tortious conduct." (Citation omitted; internal quotation marks omitted.) *Mirjavadi* v. *Vakilzadeh*, supra, 310 Conn. 192. "[T]o be within the scope of the risk, the harm actually suffered must be of the same general type as that which makes the defendant's conduct negligent in the first instance." (Emphasis omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 609, 662 A.2d 753 (1995).

In the present case, we conclude that it is impossible to determine from the current record whether "the mind of a fair and reasonable person could reach only one conclusion [regarding the foreseeability of the harm]." *McDermott* v. *State*, supra, 145 Conn. App. 87. "The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. . . . 'It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable

disagreement the question is one to be determined by the trier as a matter of fact.' . . . Therefore, only if the [intervening factor] was not foreseeable as a matter of law will this court reverse the jury's determination." (Citations omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 611. In *Stewart*, the plaintiff had been murdered in a parking garage with a history of robberies, but no history of killings. Id., 601. This court concluded that the trial court correctly instructed the jury to consider the general nature of the harm, i.e., the criminal activity in the garage and in the surrounding area, to determine the scope of the risk, despite the defendant's claim that its negligence, if any, was not the proximate cause of the decedent's death because of the intervening act of the murderer. Id., 609.

In the present case, the trial court found as a matter of fact that the cones delineated the work zone. Whether the failure of the defendant's employees to remove the decedent from the work zone was negligent, and whether that negligence was the proximate cause of the injury, were questions of fact for the trier. The issue cannot be resolved by reference to an industry standard that does not appear to apply to pedestrians and, in and of itself, is not conclusive evidence of negligence or the lack thereof. Further, the issue of the defendant's control of its work zone, and the subsequent failure to remove the decedent from that zone, may also be an issue of fact for the trier. The trial court found that it was reasonably foreseeable that a bystander would be fatally injured by a tree being cut when the bystander was within the perimeter of a tree removal work zone. The issue is certainly debatable among reasonable people. Therefore, the issue must be determined by the trier of fact.

V

For the foregoing reasons, we agree with the Appellate Court that the trial court used the wrong standard in its determination of liability and damages. Therefore, the judgment of the Appellate Court reversing the judgment of the trial court is affirmed. We disagree, however, with the Appellate Court's determinations of the conclusiveness of industry standard, foreseeability and proximate cause. Therefore, we reverse the judgment of the Appellate Court as it relates to rendering judgment in favor of the defendant, and remand the case to the Appellate Court with direction to remand the case to the trial court for a new trial.

The judgment of the Appellate Court is affirmed with respect to the reversal of the trial court's judgment in favor of the plaintiff; the judgment of the Appellate Court is reversed with respect to the direction to render judgment on remand in favor of the defendant, and the case is remanded to the Appellate Court with direction to remand the case to the trial court for a new trial in accordance with this opinion.

In this opinion the other justices concurred.

[1] For convenience, we refer to Madeline McDermott in both capacities as the plaintiff.

[2] Judge Pellegrino authored a dissenting opinion in which he concluded that "the defendant had a duty to protect members of the public from foreseeable harm within the coned work zone it had created, and, accordingly, that the determinative fact in this case is that the decedent was standing within the perimeter of the work zone at the time he was struck by the log." *McDermott* v. *State*, supra, 145 Conn. App. 88.

[3] Cf. *Considine* v. *Waterbury*, 279 Conn. 830, 867–68, 905 A.2d 70 (2006) (building code violation not specifically designed to protect plaintiff may be evidence of standard of care in industry).