JAMES M. MALLOY *v.* TOWN OF COLCHESTER ET AL.
(AC 24228)

Dranginis, West and DiPentima, Js.

Argued April 30—officially released October 19, 2004

*William F. Gallagher*, with whom were *Mark A. Balaban* and, on the brief, *Hugh D. Hughes*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was *Jay T. DonFrancisco*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. In rural Connecticut, the traveling public continues to face the danger of roaming horses on public roads. See *State* v. *Poplowski*, 104 Conn. 493, 500, 133 A. 671 (1926). This case arises from a collision between a roaming horse and an automobile. The plaintiff, James M. Malloy, appeals from the judgment rendered in favor of the defendants after the trial court directed a verdict in favor of the defendant zoning officer, Alicia Lathrop, and set aside the verdict against the defendant animal control officer, Donald Favry, the first selectman, Jenny Contois, and the town of Colchester (town). On appeal, the plaintiff claims that the court improperly (1) concluded that Favry and Contois did not owe a duty to the plaintiff under General Statutes (Rev. to 1997) § 22-368 because the defendants had notice for years of horses and other livestock roaming in the immediate area of the collision, but did nothing because of a misunderstanding or ignorance of the statutory authorization to act and (2) concluded that fencing of horses was not required by Colchester ordinances or state statutes.[1]

At approximately 1:15 a.m. on October 24, 1998, the plaintiff was operating his motor vehicle on Chestnut Hill Road in Colchester. At that time, a horse owned by the apportionment defendants,[2] John Ancona and

[1] The plaintiff makes several other claims. The plaintiff asserts that (1) governmental immunity does not protect the defendants and (2) in the event of a new trial, this court should order the admission of the testimony of a Willington police officer regarding the enforcement of General Statutes § 22-368 and the complete diary of Irene McMorrow, a neighbor. On the basis of our resolution of this appeal, we need not address those claims.

[2] A separate action was commenced against John Ancona and Laura Ancona, which was not consolidated with this action. In this action, the defendants filed an apportionment complaint, alleging that the Anconas, the owners of the horse, were responsible for the plaintiff's injuries. The plaintiff did not assert claims against the Anconas.

Laura Ancona, wandered onto the road and collided with the plaintiff's vehicle. As a result of the collision, the plaintiff suffered serious injuries.

The factual genesis of the action began about one decade before the collision when the McMorrow family moved to the property adjoining that of the Anconas. We note that we must consider the facts presented at trial most favorably to the plaintiff. See *Seguro* v. *Cummiskey*, 82 Conn. App. 186, 190, 844 A.2d 224 (2004). The Anconas kept a variety of animals on their property. As a result of the Anconas' letting their dogs roam through the neighborhood, hard feelings developed between the neighbors. For many years, dogs were the source of complaints, but at some point the Anconas' sheep, swine and horses also wandered onto the neighbor's land. The McMorrows complained to Lathrop, Favry and Contois about the wandering animals. The officials told the McMorrows that there was nothing that they could do about the situation. The animal warden claimed that he could not take custody of an animal unless he found it roaming free. He testified, however, that he had given written and verbal warnings to the Anconas about letting their animals run free.

On the date of the accident, Irene McMorrow believed that the horse was roaming because she had heard Laura Ancona calling for the horse during the day and into the evening. McMorrow had ceased calling the individual defendants to report roaming animals because the defendants had told her that unless they found the animals running loose, there was nothing that they could do. She did not tell the defendants that she believed that the horse was wandering at the time in question.

The following procedural history is pertinent to the plaintiff's appeal. The plaintiff commenced the action

on or about August 1, 2000. The defendants denied the allegations of negligence, and the individual defendants alleged that the plaintiff's claims were barred by the doctrine of governmental immunity, comparative negligence and the applicable statute of limitations. The town asserted that the claims were barred by the doctrine of governmental immunity, both common law and General Statutes §§ 7-465 and 52-557n.

At the conclusion of evidence, the defendants filed a motion for a directed verdict. The court granted the motion as to Lathrop, but reserved decision as to Favry, Contois and the town.

The case was submitted to the jury, which returned a plaintiff's verdict apportioning liability as follows: the Anconas, 38 percent, the plaintiff, 36 percent, the first selectman, 13 percent, and the animal control officer, 13 percent at fault. The jury awarded economic damages in the amount of $1,757,847 and noneconomic damages in the amount of $2,417,583.

The plaintiff filed a motion to set aside the directed verdict as to Lathrop. The motion was denied. The remaining defendants filed a motion to set aside the verdict against them. Their motion was granted. This appeal followed.

I

The plaintiff first claims that the court improperly set aside the verdict as to Favry and Contois. In particular, the plaintiff argues that the defendants had notice of horses and other livestock roaming in the immediate area of the collision and did nothing because of a misunderstanding or ignorance of the statutory authorization to act. The plaintiff bases his argument on the court's

conclusion that in the absence of notice, § 22-368[3] does not create a duty. The plaintiff argues that the defendants insulated themselves from liability by telling McMorrow that there was nothing they could do about the wandering animals. The plaintiff asserts that if the defendants had not disavowed a duty to act, on the night of the accident, McMorrow would have notified the appropriate authorities, and the accident would have been prevented.

Our standard of review of a court's granting of a motion for a directed verdict or a motion to set aside the verdict is well settled. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003).

As a preliminary matter, we note that in support of his argument, the plaintiff has not cited any precedent, Connecticut or otherwise. The plaintiff has provided us with no law and sparse legal analysis to support his argument. We recognize that there is no available legis-

---

[3] General Statutes § 22-368, which was repealed in 2000, but was in effect at the time of the accident, provides in relevant part that "any person may, and the selectmen of any town shall, impound horses, asses, mules, neat cattle, or sheep, swine, goats or geese found at large on any highway or commons, or any such animal found abandoned or straying at large. . . ."

lative history of the statute in question and no helpful precedent interpreting this now nonexistent statute.

Under the peculiar circumstances of this case, we are not persuaded by the plaintiff's argument that the defendants should not be able to benefit from insulating themselves from liability. It may be that one owing a mandatory duty should not be able negligently to create circumstances that preclude the triggering of that duty. Nevertheless, because the connection between the defendants' conduct and the plaintiff's injury was too attenuated, we do not address the plaintiff's argument as to duty, but rather address the issue of proximate cause.

It is well settled that a tortfeasor is liable for all damages proximately caused by its negligence. *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 604, 724 A.2d 497 (1999). "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . [L]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . .

"Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . In negligence cases . . . in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically

indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff. . . .

"The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Essential to determining whether a legal duty exists is the fundamental policy of the law that a tortfeasor's responsibility should not extend to the theoretically endless consequences of the wrong. . . . Even where harm was foreseeable, [our Supreme Court] has found no duty when the nexus between a defendant's negligence and the particular consequences to the plaintiff was too attenuated. . . .

"[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be *based upon more than conjecture and surmise*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Weigold* v. *Patel*, 81 Conn. App. 347, 354–55, 840 A.2d 19, cert. denied, 268 Conn. 918, 847 A.2d 314 (2004).

Here, it is clear that the legal cause of the accident was the horse and its presence in the road. Even if we assume arguendo that on the night of the accident, McMorrow notified the defendants of the roaming animal, it is conjecture to think that the animal would have been located before the unfortunate accident. Even if the animal had been located, it is conjecture to think that the people engaged in the search would have been able to control or contain the horse in such a way as

to have prevented the accident. Moreover, one cannot say that the defendants' alleged failure to act in the past was the proximate cause of the injury because, even if the defendants had impounded the horse in the past, it does not necessarily follow that the horse would not have been roaming on the night in question. There are simply too many assumptions that need to be made in order for this court to conclude that the defendants' failure to investigate the incident was the proximate cause of the plaintiff's injury.

The plaintiff also claims that the court improperly rendered judgment in favor of the defendants because their motion to set aside the verdict did not present the court with a proper request for judgment. We are not persuaded.

The defendants filed a motion to set aside the verdict and in arrest of judgment and a memorandum of law in support of that motion. In the memorandum was a request that the court "set aside the verdict against Favry and Contois and enter judgment in their favor." At the close of evidence, the defendants requested that the court set aside the verdict and render judgment in favor of all the defendants.

We conclude that the defendants substantially complied with Practice Book § 16-37 so that the court properly could set aside the verdict and "direct the entry of judgment as if the requested verdict had been directed . . . ." To conclude otherwise would be to elevate form over substance, and our appellate courts have repeatedly "eschewed applying the law in such a hypertechnical manner so as to elevate form over substance. See, e.g., *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 422, 797 A.2d 494 (2002) ([t]o conclude . . . that the fact that the plaintiff invoked [a statute] instead of bringing a common-law action in equity deprived the trial court of jurisdiction would be to exalt form over

substance) . . . ." (Citations omitted; internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 34, 848 A.2d 418 (2004).

II

The plaintiff next claims that the court improperly directed the verdict as to Lathrop. Specifically, he argues that under General Statutes § 22-355, Lathrop had a duty to inspect the fence around the Anconas' horse corral and that the statute required horses to be fenced in. We disagree with the plaintiff's interpretation of the statute.

Our standard of review of directed verdicts is well settled and was set out in part I. The plaintiff's claim requires us, however, to interpret § 22-355. That is a question of law subject to plenary review. See *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 275, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). Pursuant to Public Acts 03-154, § 1, we conclude that the language of § 22-355 is clear and unambiguous. The language of the statute limits its applicability to cases in which a party's domestic animals are damaged by dogs.

Section 22-355, titled "Damage by dogs to domestic animals," provides in relevant part: "(a) When any person sustains damage *by dogs* to his sheep, goats, horses, hogs, cattle, poultry or domestic rabbits kept in enclosures as described in subsection (f), such person shall report such damage to the chief administrative officer of the town in which such damage was sustained . . . ." (Emphasis added.) Subsection (f) of § 22-355 provides in relevant part: "Sheep, goats, horses, hogs, cattle, poultry and domestic rabbits shall be confined or shall be enclosed by a fence or wall of material and height sufficient to restrain them from roaming. In any case in which any town has paid an amount in excess of one hundred dollars for such damage to the owner of any

such animal or poultry, and the amount of such damage cannot be collected from the owners . . . of such dogs [the town shall be reimbursed by the state]."

Case law interpreting the predecessor of § 22-355, General Statutes (Cum. Sup. 1939) § 1120e, has made it abundantly clear that "[t]his statute prescribes the course to be followed by an owner of domestic animals to entitle him to recover of the town, as specified, for *damage to his animals by dogs*." (Emphasis added.) *Beach* v. *Trumbull*, 133 Conn. 282, 284–85, 50 A.2d 765 (1946). The statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with. Id., 289.

We conclude that the statute in question, § 22-355, is inapplicable to the facts of this case. It is clear from the title of the statute, its plain language and the case law interpreting the statute, that § 22-355 is applicable to cases involving damage caused by dogs to other specified animals. That is not the factual scenario presented here. Moreover, we conclude that the plain meaning of the statute does not support the plaintiff's position that the statute requires that horses be fenced in. Consequently, the plaintiff's argument fails.

The judgment is affirmed.

In this opinion the other judges concurred.