EDWARD C. DEMERS, JR. *v.* STEVEN C. ROSA
(AC 27713)

Schaller, DiPentima and Harper, Js.

Submitted on briefs February 9—officially released July 17, 2007

*David Compagnone* filed a brief for the appellant (defendant).

*John K. McDonald* filed a brief for the appellee (plaintiff).

*Opinion*

HARPER, J. This appeal arises out of an action by the plaintiff, Edward C. Demers, Jr., to recover damages from the defendant, Steven C. Rosa, for injuries sustained in an incident involving the defendant's roaming dog. The trial court found the defendant liable under a theory of common-law negligence and awarded the plaintiff $48,381.76 in damages, plus costs. On appeal, the defendant argues that the judgment should be reversed because (1) his negligence did not proximately cause the plaintiff's injuries and (2) the court improperly relied on inadmissible hearsay statements contained in several police reports. Because we agree that a proper showing of proximate cause is absent in this case, we reverse the judgment of the trial court.

The facts underlying the defendant's appeal are not in dispute. At approximately 5:55 p.m. on January 7, 2002, Donna Bannon called the Middlebury police department and requested assistance with a roaming dog on her property. At the time, the weather was a wintry mix of snow and sleet. Two police officers, Alton L. Cronin[1] and the plaintiff, drove separately to Bannon's residence and parked their patrol cars in the driveway. They subsequently approached the home and spoke with Bannon. Bannon told the officers that her call was prompted by concern for the safety of the dog in light of the inclement weather. She also stated that she contacted the police department only after the dog warden informed her that he was unable to come to her residence.

According to his testimony, Cronin recognized the dog, a yellow labrador retriever, because the dog had

---

[1] The court's memorandum of decision inadvertently reported the officer's name as "Alvin Cronin."

been found roaming once before. Because of this prior incident, Cronin knew the identity and address of the dog's owner. Cronin took the dog from Bannon and, while holding it by its collar, led it down the driveway to his patrol car. He put the dog in the backseat and then got into the car himself.

The plaintiff followed Cronin down the driveway and, once Cronin had gotten into his car, stopped to talk with him. It was while the plaintiff was standing next to Cronin's car that he lost his footing and slipped on the ice and snow, falling on his back. Cronin exited the car and, upon learning that the plaintiff could not move, called headquarters. Shortly thereafter, an ambulance and Middlebury police Chief Patrick J. Bona arrived at the scene. Bona later testified that he took the dog and brought it to the defendant's house, situated approximately one-half mile from Bannon's residence. Bona walked the dog to the front door of the house where, according to Bona, the defendant answered the door, took possession of the dog and thanked him for bringing it home.

In August, 2002, the plaintiff filed a four count complaint against the defendant, of which only the first count is at issue.[2] The first count alleged, inter alia, that the defendant negligently permitted the dog to roam on the day in question, thereby causing the plaintiff's fall and resulting injuries. It further alleged that the defendant frequently permitted his dogs to roam, prompting residents to file complaints with the Middlebury police department. On the basis of these facts, the plaintiff requested an award of damages, interest, costs and "such other relief as may be fair and equitable."

---

[2] The second, third and fourth counts of the complaint alleged violations of General Statutes §§ 22-363, 22-357 and 22-364. The court determined that the plaintiff could not recover under any of those theories.

The parties tried the action to the court on March 1, 2006. In a memorandum of decision issued on May 3, 2006, the court found that the plaintiff had established all of the elements of his negligence claim. In addressing the causation issue specifically, the court found that it was reasonably foreseeable that negligently allowing a dog to roam could precipitate complaints from local residents. The court further determined that it was reasonably foreseeable that a police officer could be injured during the course of responding to such a complaint because police officers had responded previously when the defendant's dogs were found roaming. Finally, the court found that the defendant's negligence in allowing his dogs to roam was a substantial factor in causing the plaintiff's injuries. On the basis of those conclusions, the court found the defendant liable in negligence and awarded the plaintiff $48,381.76.[3] This appeal followed.

Because causation is an essential element of a negligence claim; see *Coste* v. *Riverside Motors, Inc.*, 24 Conn. App. 109, 112, 585 A.2d 1263 (1991); we address that issue first. "The question of proximate cause generally belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611, 662 A.2d 753 (1995). Accordingly, we will reverse the judgment of the court only if proximate cause is absent as a matter of law.

---

[3] In calculating damages, the court found that the plaintiff was 20 percent at fault for his injuries. As such, the court reduced its total damages award of $60,477.20 by 20 percent to reflect the plaintiff's contributory negligence.

The defendant argues that proximate cause is absent in this case because the dog was in the backseat of Cronin's patrol car at the time of the plaintiff's fall, and the plaintiff fell because of the ice and snow, not because of barking or some other distracting behavior by the dog. On the basis of these facts, the defendant contends that the causal nexus between the plaintiff's fall and the defendant's negligence is too attenuated to justify the imposition of liability. The defendant also alleges that it was not reasonably foreseeable that a person responding to a complaint involving a roaming dog would slip and fall on the ice and snow after the dog already had been secured.

In response, the plaintiff focuses on the fact that the defendant would not have been standing on Bannon's driveway were it not for the defendant's negligence in allowing his dog to roam. He further emphasizes that the defendant's dog had been found roaming on at least one prior occasion, necessitating police intervention. By virtue of these facts, the plaintiff maintains that it is reasonably foreseeable that a person attempting to secure a roaming dog in the snow and ice would slip and fall in the process.

At the outset, it is helpful to review some of the basic principles regarding proximate cause and causation generally. "[L]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . .

"Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their

actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." (Internal quotation marks omitted.) *Malloy* v. *Colchester*, 85 Conn. App. 627, 633, 858 A.2d 813, cert. denied, 272 Conn. 907, 863 A.2d 698 (2004). Finally, "[t]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be *based upon more than conjecture and surmise.*" (Emphasis in original; internal quotation marks omitted.) Id., 634.

In accordance with these legal principles, we turn to an examination of the scope of foreseeable risk created by allowing a dog to roam on a snowy and icy day. The parties seemingly agree that the involvement of police officers to secure the dog is properly within the scope of the risk created by such action. The parties disagree, however, about whether the officer's fall after the dog had been placed in the patrol car is beyond the scope of the reasonably foreseeable risk.

To resolve this dispute, we turn for guidance to our Supreme Court's decision in *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), a case cited by both parties in support of their respective positions. In *Lodge*, three alarm system companies negligently activated a false fire alarm, which triggered the deployment of a fire engine truck. Id., 567. While responding to the alarm, the brakes on the fire engine truck failed, causing the truck to crash into a tree. Id. Our Supreme Court concluded that the alarm system companies could not be held liable in negligence because (1) the harm suffered by the firefighters was not reasonably foreseeable and (2) the relevant policy considerations militated against the

imposition of legal responsibility for the accident. Id., 577. In determining that the accident was not reasonably foreseeable, the court found it particularly important that the direct cause was the failure of the brakes on the truck and not some condition that was in any way related to the negligent activation of the false fire alarm. Id., 574, 577. That fact was critical, the court noted, because "[l]iability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for *reasonably* foreseeable consequences." (Emphasis in original.) Id., 577.

With regard to the underlying policy considerations, the court observed that "[i]mposing liability on these defendants for a harm that they reasonably could not be expected to anticipate and over which they had no control would serve no legitimate objective of the law." Id., 578. To that end, the court noted that the firefighters, as city employees, had already been compensated for their injuries through the operation of the workers' compensation system. Id., 580. Because workers' compensation represents a policy decision that the public at large, rather than individuals, should be responsible for paying the costs associated with the hazardous nature of public safety positions, the court concluded that imposing additional liability under those circumstances "would impose an undue burden on individual members of the public." Id., 581.

Although the Supreme Court in *Lodge* framed the critical question as being one of duty, it is equally relevant to our examination of proximate cause because "[i]n negligence cases . . . in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff." (Internal quotation marks omitted.) *Malloy* v. *Colchester*, supra, 85 Conn. App. 633–34. Like an

analysis of causation, a determination of the nature of the legal duty owed, if any, must be rooted in "the fundamental policy of the law that a tortfeasor's responsibility should not extend to the theoretically endless consequences of the wrong." (Internal quotation marks omitted.) Id., 634.

Turning to the facts of this case, we are persuaded that the harm that befell the plaintiff was not reasonably foreseeable as a matter of law. When examining the scope of risk created by the defendant's negligence, one could easily foresee the possibility that a police officer could slip while in the midst of catching a roaming dog and returning it to its owner. Such a foreseeable mishap could occur, for instance, as a result of chasing after the dog, restraining the dog or trying to contain it in a particular area. Equally imaginable are so-called "dog fright" cases, in which the dog startles the police officer and thereby causes him or her to slip and fall. All of these situations could be considered properly within the scope of the risk because the harm suffered is of the same general type as that which makes the defendant's conduct negligent in the first instance. See *Doe* v. *Manheimer*, 212 Conn. 748, 764, 563 A.2d 699 (1989), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995). Here, however, we agree with the defendant that the plaintiff fell because of the ice and snow on the driveway and not by virtue of the dog's roaming free or even the dog's presence at the scene of the accident.[4] The plaintiff did not allege, and the evidence does not suggest, that the dog's behavior in the backseat of Cronin's car contributed to his fall in

---

[4] Indeed, according to the undisputed testimony of the plaintiff, Cronin and the defendant, the plaintiff's police dog was in the plaintiff's patrol car at the time of the accident. The fact that two dogs were in separate vehicles in the driveway further suggests that the presence of the defendant's dog did not directly contribute to the harm suffered by the plaintiff.

some fashion.[5] By prompting the plaintiff to come to the Bannon residence, the dog's roaming became an indirect cause of the plaintiff's fall, at best.

Admittedly, as the plaintiff argues, it is reasonably foreseeable that a police officer responding to a call on a snowy and icy day may become injured through a weather related accident. The general foreseeability of a weather related accident, however, does not, by itself, make *this particular accident* foreseeable. Furthermore, if we accepted this argument, the lens of foreseeability could be expanded to encompass generally any type of harm sustained in the midst of responding to a call during inclement weather. Our Supreme Court has never sanctioned such a broad view of the legal concept of foreseeability. On the contrary, the court has stated that the general foreseeability of the harm that occurred cannot justify the imposition of liability if the direct cause of the accident was not reasonably foreseeable. See *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 574. Furthermore, the court has admonished that the proximate cause requirement must be used to temper the expansive view of causation in fact so as to exclude "[r]emote or trivial [actual] causes" of a harm. (Internal quotation marks omitted.) *Doe* v. *Manheimer*, supra, 212 Conn. 758. Here, although the dog's roaming was the impetus for the plaintiff's trip to the Bannon residence, it can be viewed only as a "remote or trivial" cause of his fall and subsequent injury. As such, we reject the suggestion that by allowing the dog to roam on a snowy and icy day, the plaintiff should have been able to foresee that a police officer would slip and fall, not while catching the dog, but while standing beside a vehicle containing the dog.[6]

---

[5] Cronin testified that the defendant's dog was not barking or displaying any violent propensities at the time of the accident. On the contrary, according to Cronin, the dog merely "paced back and forth in the backseat a bit."

[6] We are also persuaded that the applicable policy considerations weigh heavily in favor of disallowing recovery in this type of situation. In *Lodge,*

Although the plaintiff probably would not have been present on Bannon's driveway but for the dog's roaming, "[our Supreme Court] ha[s] declined to hold that [a] defendant's conduct in contributing to the harm, principally caused 'in fact' by another person or force, was a 'proximate cause' of the harm." *Doe* v. *Manheimer*, supra, 212 Conn. 765. Here, the necessary relationship between the defendant's negligence in allowing his dog to roam, and the direct cause, i.e., the slippery driveway, is lacking. Furthermore, imposing liability on the defendant in this situation would have little effect on the prevention of the type of unforeseeable mishap suffered by the plaintiff and would contribute only modestly, if at all, to the statutory scheme already in place to prevent dogs from roaming. In light of these facts, we conclude that the defendant cannot be held legally responsible for the unforeseen consequences of his negligence in allowing his dog to roam free on the day in question. Accordingly, we do not address the defendant's alternate ground for reversing the judgment of the court.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendant on the plaintiff's complaint.

In this opinion the other judges concurred.

---

the court decided that the alarm system companies should not have to compensate the injured firefighters because the workers' compensation system represents a policy decision that the public at large, rather than individuals, should have to pay when "the risks inherent in [a public safety officer's] occupation materialize." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 580. This policy relating to the compensation of firefighters injured in the performance of their duties applies with equal force to police officers.

Furthermore, we reject the plaintiff's suggestion that recourse to the tort system is necessary to encourage the defendant to comply with General Statutes § 22-364, the "dogs roaming at large statute." The statutory penalties for violating § 22-364, as well as the threat of liability for any *foreseeable* damage caused by a roaming dog, already create a substantial incentive for dog owners to take appropriate precautions.