****************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

****************************************************

# LUIS A. MONTIJO SEQUEIRO *v.* CITY OF TORRINGTON ET AL.
## (AC 48208)

Moll, Westbrook and Eveleigh, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendants' motion for summary judgment on the ground of governmental immunity. The plaintiff had been detained in the defendant town of Winchester by the defendant W, a police officer with the Winchester Police Department, at the request of a neighboring police department. The plaintiff was thereafter transferred to the custody of police officers from the neighboring police department and placed in a jail cell, where he was later injured when he attempted suicide. He claimed, inter alia, that genuine issues of material fact existed that precluded summary judgment. *Held*:

The plaintiff's claim that genuine issues of material fact existed concerning whether he was under the influence of drugs and whether he told the police officers at the time of the transfer that he was suicidal was unavailing, as these issues were immaterial to whether policies of the Winchester Police Department gave rise to discretionary duties to which governmental immunity applied.

The trial court properly rendered summary judgment on the defendants' claims of governmental immunity, as the police department policies that the plaintiff claimed gave rise to ministerial duties were discretionary, W's actions were not actionable because they bore no demonstrable relation to the plaintiff's injuries, and the court correctly determined that the plaintiff had failed to prove that the imminent harm to identifiable persons exception to governmental immunity applied.

Argued October 8, 2025—officially released March 17, 2026

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Britain, where Justin Waltzer was substituted as a defendant; thereafter, the court, *Welch, J.*, granted the motion for summary judgment filed by the defendant town of Winchester et al. and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*Noah J. Kores*, for the appellant (plaintiff).

*Kristan M. Jakiela*, with whom, on the brief, was *Katherine E. Rule*, for the appellees (defendant town of Winchester et al.).

*Opinion*

EVELEIGH, J. The plaintiff, Luis A. Montijo Sequeiro, appeals from the summary judgment rendered by the trial court in favor of the defendant town of Winchester and one of its police officers, the defendant Justin Waltzer.[1] On appeal, the plaintiff claims that (1) genuine issues of material fact exist precluding summary judgment and (2) the court improperly determined that the counts of the complaint against the defendants were barred by governmental immunity. We affirm the judgment of the trial court.

The following undisputed facts, as detailed by the trial court in its memorandum of decision, are relevant. On the morning of December 6, 2019, Torrington police officers were dispatched to the plaintiff's home in response to a report of domestic violence. When Torrington police officers arrived, the plaintiff's wife informed them that the plaintiff was traveling by taxi to Winsted to purchase drugs and he intended to overdose. The Torrington Police Department then notified the Winchester Police Department that the plaintiff was a suspect in a domestic incident and intended to purchase enough drugs to overdose.

---

[1] The city of Torrington and Anthony Pietrafesa, Michael Giordano, Willie Quarles, William Bernabucci, Daniel Cyr, and John P. Joseph, members of the Torrington Police Department, were also named in the complaint as defendants (Torrington defendants). The original complaint also named John Doe #1 and John Doe #2 as defendants, but the causes of action against them were not included in the operative amended complaint, as it was discovered that John Doe #1 was duplicative of another individual already named as one of the Torrington defendants and Waltzer was substituted for John Doe #2. The Torrington defendants filed a motion for summary judgment as to the counts against them. The court denied summary judgment in part (as to Bernabucci, Quarles, and Joseph) and granted summary judgment in part (as to Cyr, Pietrafesa, and Giordano). The Torrington defendants did not file an appeal from the court's partial grant of summary judgment as to the counts against them. In this opinion, we refer to the town of Winchester and Waltzer as the defendants.

Winchester police officers, including Waltzer, located the plaintiff at a house in Winsted and detained him. At that time, the plaintiff did not possess drugs or drug paraphernalia. He did not present to Waltzer in a manner indicating that he had just taken drugs. The parties dispute whether the plaintiff told Waltzer that he was suicidal. Waltzer transported the plaintiff to another location in Winchester where custody of the plaintiff was transferred to Torrington police officers.

The plaintiff was transported to the Torrington Police Department where he was processed and placed in a jail cell that was equipped with a combination sink/toilet unit. That afternoon, the plaintiff climbed up the combination sink/toilet and jumped headfirst toward the floor. As a result of this act, the plaintiff sustained serious injuries, including incomplete quadriplegia and paralysis.

In 2021, the plaintiff commenced an action against the defendants. In the operative July 6, 2023 complaint, he alleged, inter alia, negligence against Waltzer in his capacity as a Winchester police officer (count eight) and indemnification against the town of Winchester, pursuant to General Statutes § 7-465[2] (count nine).[3] Both counts stemmed from the plaintiff's December 6, 2019 suicide attempt at the Torrington Police Department. Specifically, the plaintiff alleged that Waltzer breached his duty of ordinary care in failing to identify the plaintiff as suicidal, to ensure that he was provided with a psychological assessment or other necessary medical

---

[2] General Statutes § 7-465 (a) provides in relevant part: "Any town . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

[3] Counts one through seven alleged negligence against the city of Torrington and several of its police officers. See footnote 1 of this opinion.

care and to ensure that the Torrington Police Department was going to provide the necessary care for a suicidal inmate. The defendants filed an answer and special defense, asserting the special defense of governmental immunity.

The defendants filed a motion for summary judgment as to the eighth and ninth counts of the complaint, arguing that those counts were barred by the doctrine of governmental immunity. Appended to that motion were, inter alia, the transcript of the plaintiff's deposition, the transcript of Waltzer's deposition, and two policies of the Winchester Police Department concerning responding to a person experiencing a mental health crisis. The plaintiff filed an opposition, arguing that genuine issues of material fact exist precluding summary judgment and that the defendants were not entitled to governmental immunity. Appended to the plaintiff's opposition were, inter alia, Waltzer's incident report as noted in a computer aided dispatch system (incident report), and Waltzer's and the plaintiff's depositions.

In a November 4, 2024 memorandum of decision, the trial court granted the defendants' motion for summary judgment. The court rejected the plaintiff's argument that the policies, procedures and/or practices of the Winchester Police Department regarding persons in custody who are at risk of suicide gave rise to ministerial duties for which no governmental immunity applies, concluding instead that Waltzer was performing discretionary acts for which he was entitled to governmental immunity. This appeal followed. Additional facts will be set forth as necessary.

We begin with the standard of review regarding a trial court's decision to grant summary judgment. "Practice Book §[17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court

must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and [if the movant satisfies his burden] the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 221–22, 131 A.3d 771 (2016).

We next turn to the well settled law regarding the liability of municipalities. "The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [a ministerial act] refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite

injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. . . .

"The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that [e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . . Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, 336 Conn. 1, 10–11, 243 A.3d 1064 (2020).

"For purposes of determining whether a duty is discretionary or ministerial, this court has recognized that [t]here is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions. . . . A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done. . . . In contrast, when an official has a

general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is deemed discretionary." (Internal quotation marks omitted.) *Doe* v. *Madison,* 340 Conn. 1, 19–20, 262 A.3d 752 (2021). With these general principles in mind, we turn to the plaintiff's claims on appeal.

## I

The plaintiff first claims that summary judgment is improper because genuine issues of material fact exist concerning whether he was under the influence of drugs and whether he told officers at the prisoner exchange that he was suicidal. We are not persuaded.

"A material fact is a fact that will make a difference in the result of the case." (Internal quotation marks omitted.) *Hassiem* v. *O & G Industries, Inc.,* 197 Conn. App. 631, 636, 232 A.3d 1139, cert. denied, 335 Conn. 928, 235 A.3d 525 (2020). Although the issues raised by the plaintiff may be material to the resolution of his underlying negligence claims against the defendants, the question before us is not whether Waltzer properly exercised his duty of care but, rather, whether policies of the Winchester Police Department gave rise to discretionary duties to which governmental immunity applies or whether the policies created ministerial duties to which such immunity is inapplicable. With those questions in mind, we turn to the plaintiff's next claim.

## II

The plaintiff next claims that the court improperly rendered summary judgment because two policies of the Winchester Police Department gave rise to ministerial duties to which governmental immunity does not apply. We are not persuaded.

"[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not

give rise to liability on the part of the municipality. . . . Indeed, this court has long recognized that it is not in the public's interest to [allow] a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all. . . . [O]ur case law underscores the considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis . . . . Thus, as a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer. . . .

"In accordance with these principles, our courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. . . . Because the construction of any such provision, including a municipal rule or regulation, presents a question of law for the court . . . whether the provision creates a ministerial duty gives rise to a legal issue subject to plenary review on appeal. Thus . . . [t]he ultimate determination of whether . . . immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [in which case] resolution of those factual issues is properly left to the jury." (Citations omitted; internal quotation marks omitted.) *Ventura* v. *East Haven,* 330 Conn. 613, 630–32, 199 A.3d 1 (2019).

### A

The first policy at issue is Winchester Police Department General Order # 1.3.17, effective August 19, 2019 (order). The stated purpose of the order is "to provide guidance to Winchester Police officers when responding to or encountering persons experiencing a mental health crisis." Winchester Police Department, General Order #

1.3.17 (August 19, 2019) p. 1. The order states that "[i]t is the policy of the Winchester Police Department that officers determine whether a person's behavior is indicative of a mental health crisis" and provides officers "with guidance, techniques, response options, and resources so that the situation may be resolved in as constructive, safe, and humane a manner as possible." Id. The order provides details to assist officers in recognizing atypical behavior and assessing risk, while noting that responding to situations involving persons reasonably believed to be in crisis "necessitates an officer to make difficult judgments about the mental state and intent of the individual"; id.; and that "[c]ontext is crucial in the accurate assessment of behavior. Officers should take into account the totality of circumstances requiring their presence and overall need for intervention." Id., p. 3. The order describes several courses of action that an officer may take when responding to a person in crisis, including providing mental health referral information, admission to a mental health facility voluntarily or involuntarily, or making an arrest. Id., pp. 3–5. The final part of the order, concerning documentation, states in relevant part that "[o]fficers will: 1. Document the incident with a report narrative, regardless of whether or not the individual is taken into custody. Where the individual is taken into custody or referred to other agencies, officers should detail the reasons why. . . ." Id., 5.

## 1

We first conclude that the order is discretionary. The allegations in the complaint against Waltzer focus on the manner in which Waltzer exercised his discretion, arguing that he did so in a negligent manner. Specifically, the crux of the negligence count against Waltzer alleges that he "was careless and negligent for: a. failing to exercise a duty of ordinary care to identify that the plaintiff was suicidal and to bring him to the hospital for a psychological assessment or otherwise provide the necessary medical care; b. transferring custody of [the plaintiff] without ensuring the policy was followed and

without ensuring that the Torrington Police Department was going to provide the necessary care for a suicidal inmate; and/or c. failing to obtain emergency psychiatric treatment for [the plaintiff], a suicidal person, and this placed the plaintiff in danger of imminent harm."

The order provided Waltzer with discretion concerning the assessment of suicide risk and possible responses to persons in crisis. See *Mills* v. *Solution, LLC*, 138 Conn. App. 40, 49, 50 A.3d 381 (summary judgment was proper where defendants' allegedly negligent acts or omissions necessarily involved exercise of judgment, and, thus, necessarily were discretionary in nature), cert. denied, 307 Conn. 928, 55 A.3d 570 (2012). The order states that responding to situations involving persons in crisis necessitates that officers "make difficult judgments about the mental state and intent of the individual"; General Order # 1.3.17, supra, p. 1; and states that officers should "take into account the totality of the circumstances" when assessing the need for intervention. Id., p. 3. The order then provides multiple potential responses, including arrest. The terms of the order expressly state that its purpose is to "provide guidance" to officers responding to persons experiencing a mental health crisis. Id., p. 1; see *Doe* v. *Madison*, supra, 340 Conn. 32 ("descriptions of general practices or expectations that guide an employee's exercise of discretion do not create a ministerial duty"). In sum, the order requires officers to exercise judgment, which is "the hallmark of a discretionary act . . . ." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, supra, 336 Conn. 10; see also *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 179, 544 A.2d 1185 (1988) ("[t]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function").

2

The plaintiff argues that the portion of the order concerning documentation gives rise to a ministerial duty. By way of background, we note the following. Waltzer's incident report stated that the Torrington

Police Department requested the Winchester Police Department to make contact with the plaintiff, who was a domestic violence suspect, and that the plaintiff had made statements that he was going to "a drug dealer's place to get drugs to overdose," that when the plaintiff was detained he did not have any contraband or weapons in his possession, and that the Winchester Police Department detained him and turned him over to the Torrington Police Department.

Although the order directs officers to document certain incidents in a particular manner, there is a more fundamental question to be answered: whether a duty exists at all in relation to such documentary requirements. Whether a duty[4] exists is a question of law for the court and the threshold inquiry is whether the specific harm alleged by the plaintiff was foreseeable to the defendants.[5] See *Ruiz* v. *Victory Properties, LLC*, 315

[4]The essential elements of a cause of action in negligence are a duty, a breach of that duty, causation, and actual injury. See, e.g., *Jagger* v. *Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 687 n.13, 849 A.2d 813 (2004).

Because there was no actual causation, there is no proximate causation. See, e.g., *Malloy* v. *Colchester*, 85 Conn. App. 627, 633, 858 A.2d 813 ("[b]ecause actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions" (internal quotation marks omitted)), cert. denied, 272 Conn. 907, 863 A.2d 698 (2004).

We, nonetheless, note that "[t]he question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue [and it] becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 130 Conn. App. 343, 349, 23 A.3d 758 (2011). The present case presents the rare circumstance wherein there is no room for reasonable disagreement that Waltzer's alleged failure to properly include a narrative report of the incident in the computer database of the Winchester Police Department, was not, as a matter of law, a substantial factor in causing the plaintiff's attempted suicide when he was in the custody of the Torrington Police Department.

[5]The test for the existence of a legal duty is (1) whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature

Conn. 320, 328, 107 A.3d 381 (2015). Foreseeability is determined in the context of causation, which consists of causation in fact (whether an injury would have occurred but for an actor's conduct) and proximate cause (whether a defendant's conduct was a substantial factor in producing a plaintiff's injury, or, in other words, whether the harm that occurred was of the same general nature as the foreseeable risk created by the defendant's negligence). See id., 328–29.

As a matter of law, there is no causal connection between the plaintiff's attempted suicide at the Torrington Police Department and Waltzer's alleged failure to write a narrative incident report in the electronic database of the Winchester Police Department. There were no allegations in the complaint that Torrington police officers were privy to the contents of Waltzer's incident report or that Torrington police officers based any of their actions or inactions on December 6, 2019, concerning the plaintiff, on the contents of Waltzer's incident report. Moreover, it is undisputed that the information contained in the incident report concerning the alleged domestic incident and the plaintiff's subsequent flight to Winsted to overdose was relayed by the Torrington Police Department to the Winchester Police Department. Because, as a matter of law, Waltzer's allegedly improper documentation of the incident bears no demonstrable relation to the plaintiff's injuries, it is not actionable. See *Stuart* v. *Freiberg*, 316 Conn. 809, 833–34, 116 A.3d 1195 (2015) (if negligent act bears no demonstrable relation to injury, it is not actionable).

3

Additionally, the plaintiff argues that Waltzer's alleged failure to follow the documentation requirement implies that he failed to follow any discretionary

of that suffered was likely to result and (2) whether, on the basis of a public policy analysis, the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328–29, 107 A.3d 381 (2015).

components of the order in any way. First, such an inference is purely speculative and, as such, is not sufficient to overcome summary judgment. See *Walker* v. *Housing Authority*, 148 Conn. App. 591, 597, 85 A.3d 1230 (2014) (although inferences may be drawn on summary judgment from underlying facts, nonmoving party may not rely on mere speculation or conjecture as to true nature of facts to overcome summary judgment). Second, whether Waltzer was negligent in the exercise of his discretion under the order is not at issue. See *Ventura* v. *East Haven*, supra, 330 Conn. 630–31 (it is not in public's interest to allow jury of laypersons to second-guess exercise of police officer's discretionary professional duty). The proper inquiry is whether the order is discretionary in nature, and we have determined that it is.

4

The plaintiff further argues that, assuming the order gave rise to discretionary duties, the court improperly determined that the imminent harm to identifiable persons exception to governmental immunity did not apply. We disagree.

"[Our Supreme Court] has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply. . . . [T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." (Citation omitted; internal quotation marks omitted.) *Haynes* v. *Middletown*, 314 Conn. 303, 312–13, 101 A.3d 249 (2014). The imminent

harm exception is very limited. See *Brooks* v. *Powers*, 328 Conn. 256, 265, 178 A.3d 366 (2018).

The court rested its conclusion that the imminent harm requirement of the exception was not met on its determination that, at the time the plaintiff was in Waltzer's custody and transferred to a Torrington police officer, Willie Quarles, he was not in imminent harm. The court reasoned that it is undisputed that the plaintiff had not overdosed at that time or even consumed narcotics, and that, notwithstanding anything the plaintiff may have said regarding a prior intent to self-harm, he was not in a position of imminent harm while handcuffed and in the immediate supervision of Waltzer or the Torrington police officer to whom Waltzer transferred him.

The plaintiff challenges these determinations of the trial court. He argues that he was in imminent harm because "[i]t was, in fact, disputed that he consumed narcotics. [The plaintiff] testified that he did. The officers testified that they did not observe any signs of intoxication. Further, he was in imminent harm because he was suicidal and he took steps to act on his suicidal ideations. He said he would overdose on drugs and die, and he went to a drug den and consumed drugs."

The plaintiff testified at his deposition that he purchased "around $100" of crack cocaine and "smoke[d] a little bit" of the crack cocaine and that the amount he had consumed was less than the amount he ordinarily used to get high. This is not inconsistent with Waltzer's deposition testimony that the plaintiff "[d]id not appear to be under the influence of narcotics or any sort of drug at the time," that he "was not presenting as someone who had taken anything," and that he did not have any drugs or drug paraphernalia on him. In fact, the plaintiff stated in his deposition that, during his interactions with Winchester police officers, he did not slur his speech and he did not have difficulty with balance, although he assumed that his pupils might have been dilated.

When asked whether there was a concern that the plaintiff should be evaluated by a mental health professional, Waltzer stated, "There was no concern. I mean, it would be concerning to release him back to the drug house, you know, if we were able to at least get him back home. I don't think he would be concerning based on the conversation I had with him and based on the fact that he wasn't presenting as high or had drugs on his person." The plaintiff stated in his deposition that, while waiting for the Torrington Police Department to arrive, he smoked five or six cigarettes and did not attempt to harm himself. The plaintiff confirmed in his deposition testimony that, if Winchester police officers had not detained him, he would have done more crack cocaine in order to "get higher" because "[t]hat's the point of doing crack." Waltzer stated in his deposition that he believed that the plaintiff was "in good hands" with the Torrington Police Department, which initially had notified the Winchester Police Department of the plaintiff's situation.

Even though the plaintiff made statements to his wife concerning an intent to overdose, when he was found by Winchester police officers, he had not overdosed and he did not attempt to harm himself. He did not appear to be under the influence of narcotics, only having consumed, according to the plaintiff himself, "a little bit" of crack cocaine, which was less than the amount he typically consumed. Under these circumstances there may be a question as to whether harm may reasonably be anticipated at some unspecified time in the future, but that is not the proper standard for evaluating imminent harm. "For purposes of determining whether a plaintiff was subject to imminent harm, [i]mminent does not simply mean a foreseeable event at some unspecified point in the not too distant future. . . . Rather, the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that *the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm.*" (Citations omitted; emphasis in original; internal quotation marks omitted.)

*Doe* v. *New Haven*, 214 Conn. App. 553, 580–81, 281 A.3d 480 (2022); see also *Haynes* v. *Middletown*, supra, 314 Conn. 314–15 n.6 ("[I]t is not enough to establish that a harm may reasonably be anticipated. . . . Rather, the risk of harm must be so great that the municipal defendant had a clear and unequivocal duty to act immediately to prevent it." (Citation omitted; internal quotation marks omitted.)). "For the harm to be deemed imminent, the potential for harm must be sufficiently immediate. . . . The risk of harm must be temporary and of short duration. . . . Imminent harm excludes risks that might occur, if at all, at some unspecified time in the future." (Citations omitted; internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 275, 41 A.3d 1147 (2012). At the time the plaintiff was handcuffed and handed over to Torrington police officers, he had not overdosed, and when he was transferred to the custody of the police department that had initially notified the Winchester Police Department of the plaintiff's situation, he was not at a risk of harm so great that Waltzer had a clear and unequivocal duty to act immediately to prevent it. Because the plaintiff failed to demonstrate, as a matter of law, that he was in imminent harm, we conclude that the trial court correctly determined that the plaintiff had failed to prove that the imminent harm to identifiable persons exception to governmental immunity applied.

## B

The second policy at issue is an interoffice memorandum sent via email from Sergeant Kevin Kinahan, to "all officers," dated November 17, 2010, concerning "Attempted Suicides, Emotionally Disturbed Persons."[6] The memorandum states in relevant part that "[a]ll calls for suicidal persons or persons who have made some attempt at suicide, or have by word or action, suggested that they want to commit some suicidal or other harmful

[6] Although not evident from the terms of the email itself, it is undisputed that Kinahan was a sergeant with the Winchester Police Department.

act against themselves, or emotionally disturbed person who requires our intervention, regardless of whether . . . such person is taken into protective custody, voluntarily brought to the hospital, or examined in the field by the Northwest Mental Health Mobile Crisis Unit, need to be cleared with an [a]ction 1. All details regarding statements made by the suicidal or emotionally disturbed person, conditions suggesting the potential for a suicidal act . . . i.e. pills/drugs . . . found where the person is treated or discovered, need to be documented. . . .'' (Footnote omitted.)

It is undisputed that Waltzer cleared the plaintiff with an action 5, which is a rendered assistance report, and not with an action 1. As reflected in his deposition transcript, which was appended to the plaintiff's opposition, Joshua Blass, a police officer with the Winchester Police Department, explained that ''[a]n action 1 is an incident report'' that includes ''[n]ame, date, time, what was discussed, whatever the circumstances were on the case. What the action was at the end, what kind of action did the officer take, witness statements, offender statements.'' Waltzer stated in his deposition that an action 1 is ''an arrest or incident report. We prompt the officer to report.'' He further explained that an action 5 is to ''render assistance.'' The deposition testimony of Blass and Waltzer concerning the descriptions of action 1 and action 5 responses is not disputed.

The court determined that the memorandum, which was dated nine years prior to the order, conflicts with the order, which is an official policy of the Winchester Police Department and therefore supersedes the memorandum, which is not an official policy of the Winchester Police Department. The court further determined that the Winchester Police Department was called by the Torrington Police Department to assist in finding, detaining, and transferring the plaintiff to the Torrington Police Department and was not called for a suicidal person and, thus, even if the memorandum were a policy of the Winchester Police Department that was not in conflict

with or superseded by the order, the memorandum did not apply such that Waltzer was required to clear the plaintiff with an action 1 instead of an action 5.

The plaintiff argues that the court improperly determined that the order superseded the memorandum. He also argues that the court improperly determined that, even if the memorandum was not superseded, it did not apply because Waltzer was assisting another agency. Finally, he contends that the portion of the memorandum requiring certain incidents to be cleared as an action 1 gave rise to a ministerial duty.

Even if we assume, when viewing the evidence in the light most favorable to the nonmoving party, that the memorandum is not superseded and that it applies, the plaintiff cannot prevail on his argument for reasons similar to those stated in part I A 2 of this opinion. Simply put, as a matter of law, there is no duty, or in other words, no foreseeable causal connection between the plaintiff's attempted suicide at the Torrington Police Department and Waltzer's alleged failure to document the incident as an action 1. Because, as a matter of law, Waltzer's allegedly improper documentation of the incident bears no demonstrable relation to the plaintiff's injuries, it is not actionable. See *Stuart* v. *Freiberg*, supra, 316 Conn. 833–34.

For the foregoing reasons, we conclude that the trial court properly rendered summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.